OPINION OF THE COURT
Arthur W. Lonschein, J.
The unusual question presented by this motion is whether an agreement by a potential defendant in an action to accept service of the summons by mail is a stipulation within the contemplation of CPLR 2104, and hence unenforceable unless made in conformity with that section. It also presents a cautionary tale of value to all practitioners.
Plaintiff, believing herself possessed of a cause of action in medical malpractice against the defendant, retained an associate in a well-known firm to represent her. The senior partner in that firm, in the course of reviewing new matters accepted by the firm, discovered that the potential defendant was his personal physician and indeed a personal friend. Consequently, the partner telephoned the doctor twice, in order to assure himself that there would be no objection if his firm undertook plaintiff’s case. Presumably, he also informed his client of the situation. Since the doctor believed that the proposed action was without merit, and realized that if this firm declined the matter another firm would accept it, he readily indicated his lack of objection. So much is agreed to by both sides.
*420 The conflict comes over the subject of an alleged third conversation: the partner claims that he and the doctor entered into an oral agreement whereby the summons would be mailed to the doctor, who would accept such service as valid, in order to avoid any possible embarrassment should the process server happen to barge in on a waiting room full of patients. The doctor, of course, denies any such agreement to accept mail service.
The doctor admits, however, that he did in fact receive the summons in the mail, and forwarded it to his carrier.
No answer to the complaint was made, and plaintiff moved for an inquest. The defendant doctor opposed the motion on the grounds that no summons had been served, and the court directed this hearing on the service issue.
At the hearing the partner testified that after the initial pair of telephone conversations, which concerned his firm’s representation of the plaintiff, he had a third telephone conversation with the doctor in which the manner of service was discussed. He further testified that he laid out before the doctor the possibility of embarrassment if service were entrusted to a process server in the normal manner, and suggested mail service, to which the doctor responded “Do whatever you think best”, or words to that effect.
The doctor testified that he remembered having two telephone conversations with plaintiff’s counsel concerning the representation question, but did not recall any third telephone conversation, and does not recall any discussion of service during the conversations he does recall. In response to a direct question as to whether or not there was a conversation regarding service, the doctor answered: “I have no recall of that at all. My answer would have to be no”.
In resolving this issue of fact, the court first observes that both witnesses are men of integrity, and the court has no doubt that both were truthful as to their recollections and perceptions of events. Nevertheless the testimony presents a direct issue of credibility, and the court must decide whose recollections and perceptions are more accurate. The doctor found himself unable to recall the third telephone *421 conversation at all, and was generally steadfast in his belief that it did not take place. On cross-examination, however, he did state, at one point, that it was “possible” that a third conversation did occur. He said that the manner of service was a matter of indifference to him, and that he did not understand it.
The lawyer, of course, understood the legalities of service of process and was keenly interested in it. His clarity of recollection as to the matter of service, which was a topic of concern to him, must, in the court’s opinion, carry the day when compared with the doctor’s lack of recollection of that subject since the doctor appeared unconcerned about the suit in general and about the subject of service in particular. The court is mindful of the obvious fact that the lack of recollection is consistent with his contention that the conversation didn’t happen, but the court is persuaded that it did happen, and simply made no impression in his memory.
The court finds, therefore, that the third conversation took place essentially as testified to by the lawyer. The court also finds that in the context of the conversation, the doctor’s reply “Do whatever you think best”, was an assent to the proposed mail service.
THE AGREEMENT IS ENFORCEABLE
The plaintiff cites cases which establish the proposition that potential litigants may agree upon a method of service not sanctioned by the CPLR: Pohlers v Exeter Mfg. Co. (293 NY 274) and National Equip. Rental v Dec-Wood Corp. (51 Misc 2d 999).
The doctor contends that any such agreement in this case is unenforceable since it was not reduced to a writing. Now clearly, the usual Statutes of Frauds (General Obligations Law, § 5-701; Uniform Commercial Code, § 2-201) do not apply. He advances the ingenious argument that this was not an ordinary contract, but a stipulation in the action subject to the requirements of CPLR 2104. He bases the argument on the language of that section, which refers to “An agreement between parties or their attorneys relating to any matter in an action”.
The defendant notes that the cases cited above both upheld written agreements as to service. This is true but *422 insignificant, as the facts of the writings were in no way relied on. It certainly does not serve to bring such agreements within the ambit of CPLR 2104. No direct case authority is cited in support of the defendant’s position and the court has been unable to find any cases in which the issue was discussed. However, the doctor urges the court to take a “broad view” of the question.
By its terms, CPLR 2104 refers to “parties” and “matter [s] in an action” (emphasis supplied). Before the actual service of a summons there is no action, and the disputants have not yet become parties to one. The CPLR itself is intended to “govern the procedure in- civil judicial proceedings” (CPLR 101; emphasis supplied). Neither the CPLR in general nor section 2104 in particular have application to the conduct of prospective litigants before a proceeding commences. CPLR 2104 may be viewed as a sort of intraaction Statute of Frauds, but nothing of which the court is aware warrants its extension to the situation at bar. The court is willing to take a sufficiently broad view of the statute so as to fulfill the purposes of the CPLR as a whole, but the interpretation put forward by the doctor is unreasonable and untenable.
In sum, the Legislature has not seen fit to require that an agreement as to the manner of service of process be reduced to writing, and the court will not strain to read such a requirement into CPLR 2104. The court is convinced that the doctor knowingly entered into an agreement to accept service of the summons by ordinary mail to his office, and that such service was made.
THE CAUTIONARY TALE
The summons was mailed on October 6, 1979 and received shortly thereafter. The Statute of Limitations ran out in December, 1979. The motion for an inquest was not submitted until September, 1980. If the plaintiff had been unable to convince the court that an enforceable agreement had been made, the cause of action would have been lost.
Both plaintiff’s and defendant’s counsel in this matter are exceptionally able, experienced trial firms. The court is fully in sympathy with plaintiff’s counsel’s desire to avoid pointless embarrassment to the potential defendant.
*423 As events have shown, however, the method chosen to avoid this very nearly led to embarrassment to counsel. Lawyers in similar situations in the future would be well advised to protect themselves and their clients by arranging for a mutually convenient time and place to effect service by personal delivery.
On the defendant’s side, an equally cautionary tale is presented. The summons was actually received by the doctor in October of 1979, when the Statute of Limitations had nearly run. A prompt motion to dismiss for failure of personal jurisdiction would have settled this issue within a few months of that date, most likely after the expiration of the limitations period, thus preserving that important advantage for the doctor.
At that point, if the plaintiff had been successful, an answer could have been entered and the case decided on the merits. Now, nearly a year after the actual receipt of the summons, plaintiff has moved for, and is entitled to proceed to, an inquest.
While a motion to open the defendant’s default on answering the complaint is not presently before the court, it seems appropriate to comment on the effect his tactics might have on such a motion. The court is mindful of the public policy which strongly favors disposition of actions on their merits. (Marshall v Marshall, 65 AD2d 551.) It is clear that in this case defendant’s counsel has indulged in a form of gamesmanship, ignoring the summons and holding the service issue in reserve until the Statute of Limitations had run. This is an all too common course of conduct, which has as its aim the avoidance of decisions on the merits and the substitution of dispositions based on procedural defects, technicalities, and sharp practice. It may be that in the past defaults such as this would have been opened as a matter of course. Today, however, such is not the case. The courts will insist on a reasonable excuse for the default, as well as a meritorious defense. (Barasch v Micucci, 49 NY2d 594; Bruno v Village of Port Chester, 77 AD2d 580.) The court does not doubt that defendant’s counsel was entitled to act [or in this case, fail to act] on the strength of their belief that no valid service was effected. Whether or not the sincerity of that belief will suffice as a reasonable excuse *424 such as will allow the opening of their default is quite a different matter, and one which will have to await adjudication under the strict standards enunciated in Barasch v Micucci (supra). It may well be that defense counsel adopt this ploy at their (and their clients’) peril.